IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff**<br><br>v.<br><br>$18,201.00 IN U.S. CURRENCY,<br><br>**Defendant.** | CIVIL NO. 19- |

## VERIFIED COMPLAINT FOR FORFEITURE IN REM

TO THE HONORABLE COURT:

COMES NOW, plaintiff, the United States of America, by and through its undersigned attorneys, Rosa Emilia Rodríguez-Vélez, United States Attorney for the District of Puerto Rico; Héctor E. Ramírez-Carbó, Assistant United States Attorney, Chief Civil Division, and Maritza González-Rivera, Assistant U.S. Attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure.

NATURE OF THE ACTION

1. This is a civil action in rem brought to enforce the provisions of Title 21, United States Code, Sections 841(a)(1) and 881(a)(6); Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 1957(a).

DEFENDANT IN REM

2. The defendant property seized by an officer of the Drug Enforcement Administration ("DEA") consists of $18,201.00 in U.S. currency.

JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over an action commenced by the United States

1

pursuant to Title 28 United States Code, Section 1345; over an action for forfeiture pursuant to Title 28, United States Code, Section 1355; and over this particular action pursuant to Title 21, United States Code, Sections 841(a)(1) and 881(a)(6); Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 1957(a).

4. This Court has in rem jurisdiction over the defendant currency pursuant to Title 28, United States Code, Section 1355(b)(1)(A) (acts and omissions giving rise to the forfeiture occurred in this district) and Section 1355(b)(1)(B) (the defendant currency is found in this district).

5. Venue is proper in this district pursuant to Title 28, United States Code, Section 1355(b)(1)(A) (acts and omissions giving rise to the forfeiture occurred in this district) and Section 1395 (the defendant currency is found in this district).

## BASIS FOR FORFEITURE

6. This is a civil action in rem brought to enforce the provisions of Title 21, United States Code, Sections 841(a)(1)(Unlawful acts and 881(a)(6)(All moneys, negotiable, instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this chapter), Title 18, United States Code, Sections 1956(a)(1)(B)(i) (Laundering of monetary instruments) and 1957(a) (Engaging in monetary transactions in property derived from specified unlawful activity).

## FACTS

7. The facts and circumstances supporting the seizure and forfeiture of the defendant currency are contained in the Title 28, United States Code, Section 1746 unsworn declaration of the

DEA, Special Agent, Jasmin Garcia attached hereto, and incorporated herein as if fully stated.

CLAIM FOR RELIEF

WHEREFORE, the United States of America prays that a warrant of arrest for the defendant currency be issued; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant currency condemned and forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

RESPECTFULLY SUBMITTED,

In San Juan, Puerto Rico, this 17th day of May, 2019.

ROSA EMILIA RODRIGUEZ-VELEZ
United States Attorney

s/Héctor E. Ramírez-Carbó
Héctor E. Ramírez-Carbó
Assistant U.S. Attorney
Chief, Civil Division
USDC-PR-NO. 214902
UNITED STATES ATTORNEY'S OFICE
Torre Chardón, Suite 1201
350 Carlos Chardón Street
San Juan, Puerto Rico 00918
Phone Number: (787)766-5656
Hector.E.Ramirez@usdoj.gov

s/M González
Maritza González-Rivera
Assistant United States Attorney
USDC-PR No. 208801
UNITED STATES ATTORNEY'S OFICE
Torre Chardón, Suite 1201
350 Carlos Chardón Street
San Juan, Puerto Rico 00918
Phone Number: (787) 766-5656
maritza.gonzalez@usdoj.gov

VERIFIED DECLARATION

I, Maritza González-Rivera, Assistant U.S. Attorney, for the District of Puerto Rico, declare under penalty of perjury as provided by Title 28, United States Code, Section 1746, the following:

That the foregoing Complaint is based on reports and information furnished to me by the Drug Enforcement Administration ("DEA"); that everything contained therein is true and correct to the best of my knowledge and belief.

Executed in San Juan, Puerto Rico, this 17th day of May, 2019.

S/M Gonzalez
Maritza González-Rivera
Assistant U.S. Attorney

VERIFIED DECLARATION

I, Jasmin Garcia, Special Agent, DEA declare as provided by Title 28, United States Code, Section 1746, the following:

I have read the contents of the foregoing Complaint for Forfeiture in Rem and the attached unsworn declaration thereto, and I find the same to be true and correct to the best of my knowledge and belief. I declare under penalty of perjury that the foregoing is true and correct.

Executed in San Juan, Puerto Rico, this 17 day of May, 2019.

Jasmin Garcia, Special Agent
Drug Enforcement Administration ("DEA")

**UNSWORN DECLARATION
IN SUPPORT OF FORFEITURE COMPLAINT**

**INTRODUCTION**

Pursuant to Title 28, United States Code, Section 1746, I, Jasmin Garcia, Special Agent, of the United States Department of Justice, Drug Enforcement Administration, declare under penalty of perjury that the foregoing is true and correct:

I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510 (7). I am, therefore, an officer who is empowered to conduct criminal investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section, 2516.

I have been employed as a Special Agent with DEA since October of 2015. I am currently assigned to the DEA Caribbean Division, San Juan, Puerto Rico Office, conducting investigations of large-scale cocaine trafficking organizations, violent gangs and federal narcotics and firearms violations, under Title 21, United States Code, and Title 18, United States Code.

I have actively participated in conspiratorial investigations concerning the unlawful importation and distribution of controlled substances; the laundering and concealment of drug proceeds; that involved pen register, trap, and trace devices, cell-site simulator locations, cellular signal canvassing, and the monitoring and recording of court-authorized federal Title III interceptions, which have led to the successful arrests and prosecutions, and the seizure of narcotics, drug proceeds, vehicles, and real property.

**PROPERTY TO BE FORFEITED**

$18,201.00 IN U.S. CURRENCY

1

**BASIS FOR FACTS CONTAINED IN THIS UNSWORN DECLARATION**

I make this unsworn declaration, on information and belief derived from the following source:

1. On January 31, 2019, AirTAT members were notified by Task Force Officer (TFO) Coll that a Hispanic male, identified as Jose J MARTINEZ-GUEVARA, would be traveling from Orlando, Florida to Puerto Rico that same day on Jet Blue Flight 1933. On the same date, TFO Coll provided AirTAT members with MARTINEZ-GUEVARA's Florida DAVID photo and information to assist AirTAT members in positively identifying MARTINEZ-GUEVARA. MARTINEZ-GUEVARA is believed to be related to a Transnational Criminal Organization (TCO) responsible for drug trafficking and money laundering activities. According to the information provided by TFO Coll, MARTINEZ-GUEVARA's flight had been purchased on January 28, 2019 by another individual.

2. On the same date, AirTAT Agents arrived to the Jet Blue Baggage claim carousel 4 at the Luis Munoz Marin International Airport (LMMIA). At approximately 8:54 p.m. SA Jasmin Garcia identified, a Hispanic male matching the description of MARTINEZ-GUEVARA walking into the baggage claim area and proceed to the men's restroom.

3. At approximately 9:05 p.m., AirTAT members observed MARTINEZ-GUEVARA recover a light gray colored suitcase from the Jet Blue carousel. At that time TFO Liliam Carbonell approached MARTINEZ-GUEVARA and engaged him in a consensual conversation regarding his travel. TFO Carbonel identified herself and as a law enforcement officer and requested a form of identification from MARTINEZ-GUEVARA. MARTINEZ-GUEVARA provided TFO Carbonell with a Florida Driver's License. TFO Carbonell asked MARTINEZ-GUEVARA where he was traveling from. MARTINEZ-GUEVARA stated that he was traveling from Orlando. SA

Garcia asked MARTINEZ-GUEVARA if he resided in Puerto Rico or Florida. MARTINEZ-GUEVARA stated that he resided in Davenport, Florida. SA Garcia asked MARTINEZ-GUEVARA how long he was planning on visiting Puerto Rico for. MARTINEZ-GUEVARA stated that he would be in Puerto Rico for a few weeks. SA GARCIA asked MARTINEZ-GUEVARA if he had already purchase a return flight. MARTINEZ-GUEVARA stated that he did not have a return flight to Florida. SA Garcia asked MARTINEZ-GUEVARA when he had purchased his flight. MARTINEZ-GUEVARA stated that he had purchased the flight a week prior. SA Garcia asked MARTINEZ-GUEVARA if he had personally purchased the flight. MARTINEZ-GUEVARA stated he did and also stated that he purchased the flight on the internet. TFO Carbonell asked MARTINEZ-GUEVARA where he would be visiting and staying in Puerto Rico. MARTINEZ-GUEVARA stated that he would be visiting and staying in Bayamon.

4. TFO Carbonell asked MARTINEZ-GUEVARA if he was traveling with any contraband to include explosives, firearms, drugs, prescribed medications, and/or money. MARTINEZ-GUEVARA explained to TFO Carbonell that he was only traveling with money. TFO Carbonell asked MARTINEZ-GUEVARA where he was carrying the United States Currency (USC). MARTINEZ-GUEVARA stated that he was carrying USC on his person, in his satchel, and inside his backpack. TFO Carbonell asked MARTINEZ-GUEVARA if he was transporting any USC in his suitcase. MARTINEZ-GUEVARA firmly stated that he was not transporting any USC in his suitcase. MARTINEZ-GUEVARA reassured TFO Carbonell that he was only carrying USC in his backpack and satchel. TFO Carbonell asked MARTINEZ-GUEVARA how much USC he was carrying total. MARTINEZ-GUEVARA stated $6,000, hesitated and then stated $8,000. MARTINEZ-GUEVARA then stated that the amount was between $6,000 to $8,000.

5. TFO Carbonell asked MARTINEZ-GUEVARA if he consented to a dog sniff of his luggage and MARTINEZ-GUEVARA consented. On the same date, a Bayamon, Puerto Rico Police Department (PRPD) Canine (K-9) Furher #33079, handled by PRPD Agent Alex Santiago Ortiz #23474 was passed over was passed over MARTINEZ-GUEVARA's luggage. Furher conducted a sniff of the luggage and gave a positive alert to the presence of a narcotics odor emitting from MARTINEZ-GUEVARA's satchel, backpack, and suitcase. TFO Carbonell explained to MARTINEZ-GUEVARA that the K-9 had alerted positive on the all pieces of his luggage and asked MARTINEZ-GUEVARA for consent to search his luggage. MARTINEZ-GUEVARA consented.

6. During the search of MARTINEZ-GUEVARA's suitcase TFO Carbonell discovered two rectangular objects wrapped in carbon paper concealed inside a travel case within MARTINEZ-GUEVARA's suitcase. TFO CARBONELL asked MARTINEZ-GUEVARA what was inside the two carbon paper wrapped rectangular objects. MARTINEZ-GUEVARA stated it was USC. TFO Carbonell asked MARTINEZ-GUEVARA if he would accompany Agents to a secure location for further questions and a thorough search of his luggage. MARTINEZ-GUEVARA agreed to accompany Agents.

7. On the same date, Agents proceeded with the interview. SA Garcia asked MARTINEZ-GUEVARA what he did for work. MARTINEZ-GUEVARA stated that he bought and sold cars from auction. MARTINEZ-GUEVARA stated that he possessed a license to buy cars at auction. SA Garcia asked MARTINEZ-GUEVARA if he had a company to sell cars. MARTINEZ-GUEVARA stated that he was self-employed. SA Garcia asked MARTINEZ-GUEVARA how much he made approximately a month selling cars at auction. MARTINEZ-GUEVARA stated that

it was hard to give an estimate because it varies month to month. MARTINEZ-GUEVARA stated that some months he did not sell any cars.

8. MARTINEZ-GUEVARA stated that he also had a restaurant with his father-in-law, who he identified as Leandro Berrios. SA Garcia asked MARTINEZ-GUEVARA what the name of the restaurant was. MARTINEZ-GUEVARA stated the name of the restaurant was El Melendero. SA Garcia asked how helps with the restaurant if he lives in Florida. MARTINEZ-GUEVARA stated that he and his father-in-law rent the space for the restaurant. SA Garcia asked how much he pays in rent for the restaurant. MARTINEZ-GUEVARA stated that he paid $600 in rent per month.

9. During the interview, TFO Carbonell and TFO Carlos Strubbe conducted a thorough search of MARTINEZ-GUEVARA's luggage in his presence. While TFO Carbonell and TFO Strubbe searched MARTINEZ-GUEVARA's suitcase, TFO Carbonell discovered additional bundles of USC concealed between the lining of the suitcase and the hardware of the suitcase. During the search of MARTINEZ-GUEVARA's backpack, Agents also located more carbon wrapped bundles inside his backpack.

10. TFO Carbonell again asked MARITNEZ-GUEVARA how much money he was transporting in total. MARTINEZ-GUEVARRA stated that it was approximately $14,000, however he was not certain on the actual amount. TFO Carbonell reminded MARTINEZ-GUEVARA that he has stated to Agents initially that he had no money concealed inside of his suitcase and that he was only carrying between $6,000 to $8,000. MARTINEZ-GUEVARA claimed that he had forgotten that he USC was inside his suitcase.

11. SA Garcia asked MARTINEZ-GUEVARA if his wife had a job. MARTINEZ-GUEVARRA stated that she did not have a job but sold clothing on the internet. MARTINEZ-GUEVARA did not state that his wife owned a business, nor did MARTINEZ-GUEVARA provide

5

Agents with actual internet information regarding the website or social media site. Agents were unable to verify the legitimacy of MARTINEZ-GUEVARA's wife selling clothing on the internet.

12. SA Garcia asked MARTINEZ-GUEVARA how much of the $14,000 he had withdrawn from a bank. MARTINEZ-GUEVAR stated that he had only withdrawn $4,000 from a bank. SA Garcia asked when he had withdrawn the USC from the bank. MARTINEZ-GUEVARA stated that it had been about a month prior and he had done it over two withdrawals. SA Garcia asked MARTINEZ-GUEVARA where he had taken the rest of the money from. MARTINEZ-GUEVARA stated that he had the rest of the money stored at his house. SA Garcia asked MARTINEZ-GUEVARA which banks he banked with. MARTINEZ-GUEVARA stated that he only banked with Wells Fargo. SA Garcia stated who he banked with in Puerto Rico. MARTINEZ-GUEVARA stated that he banked with First Bank in Puerto Rico. SA Garcia asked MARTINEZ-GUEVARA what he was going to do with the $14,000. MARTINEZ-GUEVARA stated that he was going leave some money in the bank and at his house in Puerto Rico.

13. SA Garcia asked MARTINEZ-GUEVARA if he owned a house in Puerto Rico. MARTINEZ-GUEVARA stated in the affirmative. SA Garcia asked MARTINEZ-GUEVARA if he was paying a mortgage on the house. MARTINEZ-GUEVARA stated that he was. SA Garcia asked MARTINEZ-GUEVARA where the house was located. MARTINEZ-GUEVARA stated that the house was located in Bayamon. SA Garcia asked MARTINEZ-GUEVARA how much his mortgage was for the house. MARTINEZ-GUEVARA stated that his mortgage was $1,123 a month. SA Garcia asked MARTINEZ-GUEVARA if anyone was living at or renting his house. MARTINEZ-GUEVARA stated that no one was renting or living in his house. SA Garcia asked what the purpose of his visit was MARTINEZ-GUEVARA stated that he needed to clean the house and take care of some things.

14. SA Garcia asked MARTINEZ-GUEVARA how long he has he lived in Florida for. MARTINEZ-GUEVARA stated that he has lived there for three years. SA Garcia asked MARINTEZ-GUEVARA if he lived alone in Florida. MARTINEZ-GUEVARA stated that he lived with this wife and his 16-year-old son. SA Garcia asked MARTINEZ-GUEVARA if he was renting or owned a house in Florida. MARTINEZ-GUEVARA stated that he was renting a house for $1,100. SA Garcia asked MARTINEZ-GUEVARA how many cars he owned. MARTINEZ-GUEVARA stated that he owned two cars, a 2008 Toyota and a 2006 BMW that he had purchased at auction. SA Garcia asked MARTINEZ-GUEVARA how much he paid in utilities. MARTINEZ-GUEVARA stated that he paid approximately $300 in water and power. SA Garcia asked MARTINEZ-GUEVARA if he paid for cable and internet. MARTINEZ-GUEVARA stated that he did not. SA Garcia asked MARTINEZ-GUEVAR approximately how much he spent in gas for both vehicles per month. MARTINEZ-GUEVARA stated a lot but he was not certain.

15. SA Garcia asked MARTINEZ-GUEVARA how many cellular phone he owned. MARTINEZ-GUEVARA stated that he owned three (3) cellular phones. SA Garcia asked MARTINEZ-GUEVARA how much he paid for the cellular phones. MARTINEZ-GUEVARA stated that he paid approximately $200 for his phone, his wife's phone, and his son's phone. MARTINEZ-GUEVARA stated that he paid $40 for one of the other phones and stated that the third phone was a prepaid phone and he was not sure how much he paid for that phone. **(Agent's** Note: SA Garcia had asked MARTINEZ-GUEVARA if the ZTE Tracfone (407)577-9783 had service, when MARTINEZ-GUEVARA pulled it out of his satchel. MARTINEZ-GUEVARA stated to SA Garcia that the cellular phone did not have service and was only used to locate saved phone numbers. However when MARTINEZ-GUEVARA turned on the phone, SA Garcia was able to visibly observe on the phone's screen that the phone was in service.)

16. MARTINEZ-GUEVARA provided Agents the phone numbers for each phone and consented to a search for any illegal activity: IPhone, ZTW TLC and a ZTE Tracfone.

17. TFO Strubbe asked MARTINEZ-GUEVARA why he owned three phones. MARTINEZ-GUEVARA stated that he used the IPhone as his personal phone and the two ZTE phones for business.

18. SA Garcia asked MARTINEZ-GUEVARA what kind of paper he used to wrap the bundles of USC. MARTINEZ-GUEVARA stated that he used carbon paper. SA Garcia asked MARTINEZ-GUEVARA why he wrapped the bundles of USC in carbon paper. MARTINEZ-GUEVARA stated that he wrapped the USC in carbon paper so that the USC would be safe and no one would try to open them. SA Garcia asked MARTINEZ-GUEVARA if he really believed that no one would open them had they located them. MARTINEZ-GUEVARA did not answer. (Additional bundles of USC were located in MARTINEZ-GUEVARA's backpack, which he transported as carry-on luggage.)

19. SA Garcia asked MARTINEZ-GUEVARA how long it took him to wrap the bundles of USC. MARTINEZ-GUEVARA stated that it took him about an hour. SA Garcia asked MARTINEZ-GUEVARA if he himself wrapped the USC. MARTINEZ-GUEVARA stated in the affirmative. SA Garcia asked MARTINEZ-GUEVARA if his wife had any knowledge of the USC. MARTINEZ-GUEVARA stated that she did not. SA Garcia asked MARTINEZ-GUEVARA if he believed that his wife would mind that he was taking $14,000 to Puerto Rico. MARTINEZ-GUEVARA did not answer. SA Garcia asked MARTINEZ-GUEVARA if his wife knew that he was transporting USC. MARTINEZ-GUEVARA stated she did not. SA Garcia asked MARTINEZ-GUEVARA if anyone knew he was transporting USC. MARTINEZ-GUEVARA

stated that no one knew he was transporting USC. (Agent's opened the bundles of USC wrapped in carbon paper to reveal that the USC was wrapped with saran wrap underneath the carbon paper.)

20. SA Garcia asked MARTINEZ-GUEVARA when he is planning to fly back to Florida. MARTINEZ-GUEVARA stated that he did not know, and it depended on how long it took him to take care of things in Puerto Rico. SA Garcia asked MARTINEZ-GUEVARA what he had to take care of. MARTINEZ-GUEVARA stated that he had to clean the house. SA Garcia asked MARTINEZ-GUEVARA if his wife knew that he did not know when he was flying back to Florida. MARTINEZ-GUEVARA stated that she did. SA Garcia asked MARTINEZ-GUEVARA why his wife and son did not travel with him for such a long term trip. MARTINEZ-GUEVARA stated that his son had to go to school.

21. SA Garcia asked MARTINEZ-GUEVARA if he paid his taxes. MARTINEZ-GUEVARA stated that he paid taxes in Florida. SA Garcia asked MARTINEZ-GUEVARA if he was paying taxes in Puerto Rico for his house in Bayamon. MARTINEZ-GUEVARA stated that he did not because the house was under his wife's name and she was the one who paid the taxes for the house in Bayamon.

22. SA Garcia asked MARTINEZ-GUEVARA how often he travels to Puerto Rico. MARTINEZ-GUEVARA stated that he traveled frequently. SA Garcia asked MARTINEZ-GUEVARA how many times a year. MARTINEZ-GUEVARA stated that he traveled every six (6) months to Puerto Rico. SA Garcia asked MARTINEZ-GUEVARA when his last trip to Puerto Rico was. MARTINEZ-GUEVARA stated that his last travel to Puerto Rico was in November 2018. SA Garcia asked MARTINEZ-GUEVARA if he always traveled with large sums of USC. MARTINEZ-GUEVARA stated that he did not. SA Garcia asked MARTINEZ-GUEVARA how much money he usually travelled with. MARTINEZ-GUEVARA stated that he usually traveled

with $2,000 to $3,000 USC. SA Garcia asked MARTINEZ-GUEVARA if he currently has USC stored at his house in Bayamon or in the bank here. MARTINEZ-GUEVARA stated that he did not.

23. Agent's located a credit card for PenFed credit union inside the wallet of MARTINEZ-GUEVARA. The name of the credit card was Santo A. Columna with an expiration. When Agent's asked who the card belonged to, MARTINEZ-GUEVARA responded surprisingly and asked Agent's if that card was found in his wallet. When Agent's replied in the affirmative, MARTINEZ-GUEVARA stated that he did not know how that card would have gotten into his wallet.

24. On the same date, Agents seized $18, 201 USC from Jose J. MARTINEZ-GUEVARA. MARTINEZ-GUEVARA behavior during the interview, deceitfulness, and conflicting statements provided to law enforcement officials, are consistent with the behavior of couriers when transporting bulk currency obtained as profits from illegal narcotics. MARTINEZ-GUEVARA was not arrested and administrative seizure procedures were explained to him by the Agents during the interview. Based on the above mentioned information, Exhibit N-17 was administratively seized as drug proceeds, according to Title 21 USC 881 (a)(6).

This Unsworn Declaration is submitted in support of an Administrative Forfeiture, which involves the offenses detailed in Section 881(a)(6) of Title 21, United States Code, particularly the all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for controlled substance or listed chemical in violation of the subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter. Therefore, I have not set forth each and every fact learned during the course of this investigation.

Based upon my training and experience, participation in other investigations, and facts concerning this investigation, I believe that sufficient probable cause exits to show that there is present material evidence of a commission of a violation of a Federal Law to wit: drug traffickers in utilizing a mail/parcel service to smuggle or transport illicit drug proceeds demonstrates probable cause to Forfeit the U.S. Currency, violations of Title 21, United States Code, Sections 841(a)(1), 881(a)(6) and money laundering schemes, Title 18, United States Code, Sections 1956 (a) (1) (B)(i) and 1957 (a).

Sworn and signed under penalty of perjury, pursuant to Title 28, United States Code, Section 1746, in San Juan, Puerto Rico this 17 of May 2019.

_____
Jasmin Garcia, Special Agent
Drug Enforcement Administration ("DEA")

JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
UNITED STATES OF AMERICA

### DEFENDANTS
$18,201.00 IN U.S. CURRENCY,

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Maritza González-Rivera, AUSA, 350 Carlos Chardón Ave, Suite 1201, Hato Rey, PR 00918

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- [x] 1   U.S. Government Plaintiff
- [ ] 2   U.S. Government Defendant
- [ ] 3   Federal Question (U.S. Government Not a Party)
- [ ] 4   Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☒ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN   (Place an "X" in One Box Only)

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Title 21, USC, Sections 841(a)(1) and 881(a)(6) and Title 18, USC, Sections 1956(a)(1)(B)(i), (iii) and 1957(a)

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions)
JUDGE _____   DOCKET NUMBER _____

DATE: May 17, 2019

SIGNATURE OF ATTORNEY OF RECORD
S/Maritza González-Rivera

**FOR OFFICE USE ONLY**
RECEIPT #   AMOUNT   APPLYING IFP   JUDGE   MAG. JUDGE



# United States District Court *for the* District of Puerto Rico

## CATEGORY SHEET

1. Title of Case (Name of first party on each side only)

   US v. $18,201.00 IN U.S. CURRENCY,

2. Category in which case belongs: (See Local Rules)

   [X] ORDINARY CIVIL CASE — CIVIL FORFEITURE
   [ ] SOCIAL SECURITY
   [ ] BANK CASE
   [ ] INJUNCTION

3. Title and number, if any, of related cases (See Local Rules)

4. Has a prior action between the same parties and based on the same claim ever been filed in this Court?
   [ ] YES   [X] NO

5. Is this case required to be heard and determined by a District Court of three judges pursuant to Rule 28 U.S.C. 2284?
   [ ] YES   [X] NO

6. Does this case question the constitutionality of a state statute (FRCP 24)?
   [ ] YES   [X] NO

(Please Print)

USDC ATTORNEY'S ID NO.: 208801

ATTORNEY'S NAME: MARITZA GONZALEZ RIVERA

MAILING ADDRESS: TORRE CHARDON, SUITE 1201, 350 CARLOS CHARDON AVE

HATO REY  PR    ZIP CODE 00918

TELEPHONE NO.: 787-766-5656